UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS DARNELL FORD,

      Petitioner,

v.

RANDEE REWERTS,

      Respondent.

Case No.  22-cv-11540

Honorable Shalina D. Kumar
United States District Judge

---

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF
HABEAS CORPUS DENYING A CERTIFICATE OF APPEALABILITY
AND DENYING REQUEST FOR DISCOVERY**

---

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner Marcus Darnell Ford was convicted by a Wayne County jury of felony murder, Mich. Comp. Laws § 750.316(b); torture, Mich. Comp. Laws § 750.85; and unlawful imprisonment, Mich. Comp. Laws § 750.349(b). The state trial court sentenced Ford to life in prison for the felony murder and torture convictions, and 10 to 15 years in prison for the unlawful imprisonment conviction. His petition raises seven claims for habeas relief. For the reasons set forth, the Court DENIES the habeas petition. The Court

also DENIES a certificate of appealability and DENIES Ford's request for

transcripts and discovery, ECF No. 9.

## I.    BACKGROUND

Ford's convictions arose from the murder of his mother's boyfriend in

Detroit, Michigan. This Court recites the facts from the Michigan Court of

Appeals' opinion affirming his convictions, which are presumed correct on

habeas review. 28 U.S.C. § 2254(e)(1); *see Wagner v. Smith*, 581 F.3d 410,

413 (6th Cir. 2009):

> Defendant's convictions arise from the murder of Ali Beasley, his
> mother's boyfriend, in the early morning hours of January 5, 2015
> in Detroit, Michigan. Beasley was discovered by first responders
> in a field next to an abandoned home and taken to a hospital at
> approximately 3:00 a.m. on January 5 where he died there some
> seven hours later.

*People v. Ford*, No. 336500, 2019 WL 1371175, at *1 (Mich. Ct. App. Mar.

26, 2019).

The jury convicted Ford of felony murder, torture, and unlawful

imprisonment. After sentencing, Ford filed a claim of appeal in the Michigan

Court of Appeals.  Ford raised the following claims through counsel:

> I.    Was Mr. Ford denied the constitutional right to effective
> assistance of counsel and should be granted an
> evidentiary hearing and/or a new trial?
>
> II.   Did the trial court err when admitting Ali Beasley's
> statements to the police as a dying declaration where there

was a lack of foundation that Beasley believed death was imminent?

III.  Was Mr. Ford's right to a speedy trial violated when trial on the third case did not commence until 668 days after the initial arraignment?

ECF No. 7-22, PageID.1692.

Ford also filed his own pro se Standard 4 brief, which raised the following additional claims:

I.  Was sufficient evidence of Mr. Ford's identity presented at the preliminary examination in order to support the district court's decision to bind over?

II.  Did the trial court abuse its discretion in allowing evidence that had been deemed inadmissible hearsay and testimony from an incredible witness to be used against Mr. Ford?

III.  Was Mr. Ford denied his right to a fair trial due to spoliation of evidence where cell phone evidence was altered to improve the validity of prosecution witnesses and discredit Mr. Ford?

IV.  Did the prosecution violate Mr. Ford's due process rights by engaging in such prosecutorial misconduct as tampering with witness testimony, vouching for perjured testimony, making improper insinuations, and plea bargaining for testimony from an incredible witness?

*Id*. at PageID.1739-1740

The Michigan Court of Appeals rejected Ford's claims and affirmed his convictions and sentence. *Ford*, 2019 WL 1371175, at *14. Ford filed an

application for leave to appeal in the Michigan Supreme Court. On February 4, 2020, the court denied the application "because [it was] not persuaded that the questions presented should be reviewed by [the] Court." *People v. Ford*, 505 Mich. 974, 937 N.W.2d 661 (2020).

On September 14, 2020, Ford returned to the state trial court and filed a motion for relief from judgment raising claims concerning spoliation of evidence, inadmissible hearsay statements, violation of the Confrontation Clause, ineffective assistance of trial and appellate counsel, and prosecutorial misconduct. On January 15, 2021, the trial court denied some claims as being barred under Michigan Court Rule 6.508(D)(2) and rejected all claims on the merits. ECF No. 7-19, PageID.1471-1474. The trial court further denied Ford's motion for reconsideration. ECF No. 7-21. After the trial court denied the motion for relief from judgment, Ford filed an application for leave to appeal in the Michigan Court of Appeals. The court denied the application because Ford failed to establish that the trial court erred in denying the motion for relief from judgment. ECF No. 7-24, PageID.1949. Ford applied for leave to appeal this decision in the Michigan Supreme Court but was denied relief under Michigan Court Rule 6.508(D). *People v. Ford*, 969 N.W.2d 36 (Mich. 2022).

On June 29, 2022, Ford filed his habeas petition in this Court. The Court understands the petition to be raising the following claims:

I. Petitioner's Fourteenth Amendment and the Daubert precedent were violated due to the spoliation of evidence by cell phone expert Stan Brue.

II. The Michigan courts violated Petitioner's Due Process and Confrontation Rights by allowing an out of court statement to police to be improperly admitted as a dying declaration.

III. The Michigan courts, at all three levels violated the petitioner's Sixth Amendment Rights to a Speedy Trial.

IV. The Michigan courts, at all three levels violated Petitioner's Sixth Amendment Rights to Effective Assistance of Counsel.

V. The Michigan courts erred on all three levels, when they decided the prosecutor did not engage in misconduct that violated Petitioner's Constitutional Rights.

VI. The Michigan courts acted in unison to violate Petitioner's Compulsory Rights.

VII. The Michigan courts acted in unison to affect the framework of the Petitioner's trial created Structural Errors.

ECF No. 1, PageID.27.

Respondent filed an answer contending that several of Ford's claims are procedurally defaulted, and all claims lack merit. Ford filed a reply.

## II.    LEGAL STANDARD

5

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III.    DISCUSSION

### A. Procedural Default

Respondent argues that Ford has procedurally defaulted several of his claims, including habeas claims I,[1] III, IV (in part), V, VI, and VII. Ford argues that any procedural default should be excused based on a showing of good cause and actual innocence. The Court will address whether the claims are procedurally defaulted in turn.

### 1.  Procedural Default Standard

---

[1]      The Court finds that habeas claim I is not procedurally defaulted and will proceed to the merits of the claim.

A petitioner must meet certain procedural requirements to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In the Sixth Circuit, "[a] habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.' " *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017)); accord *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.' " *See Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 848 (1999)). "If, at the time of the federal habeas petition, state law no longer allows the

petitioner to raise the claim, the claim is procedurally defaulted." *Id*. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *Id*. (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

### 2. Claims III and V

The Court finds that Ford procedurally defaulted his speedy trial claim (claim III) because he failed to comply with state procedural rules in presenting his claim to the appropriate state court.  For the same reasons, the Court finds that Ford procedurally defaulted the following prosecutorial misconduct arguments (claim V) that: (1) the prosecutor spoiled the evidence through the admission of Stan Brue's testimony, (2) the prosecutor suppressed DNA evidence, (3) the prosecutor improperly admitted evidence to show that Petitioner was with Earnest Jackson and Akhoury Geer on the night of the murder, and (4) the prosecutor made improper arguments during closing. The Court finds that the prosecutorial misconduct arguments concerning the violations of the Fourth Amendment and flight evidence are not procedurally defaulted and will be addressed on the merits.

It is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.' " *People v. Cain*, 498 Mich. 108, 114, 869 N.W.2d 829, 832 (2015) (quoting *People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994)). "[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.' " *People v. Carines*, 460 Mich. 750, 764–65, 597 N.W.2d 130, 139 (1999) (quoting *Grant*, 520 N.W.2d at 130).  Here, for both the speedy trial and the named prosecutorial misconduct claims, the Michigan Court of Appeals determined that because Ford failed to raise the appropriate objections during trial, he did not properly preserve either claim. *Ford*, 2019 WL 1371175, at *11, 12. Accordingly, the first factor is met.

The second procedural-default factor also is satisfied because the Michigan Court of Appeals reviewed Ford's claims for "plain error" due to his failure to preserve his claims for appeal. *Id.* "[A] state appellate court's review for plain error is enforcement of a procedural rule." *Theriot*, 982 F.3d 999 at 1004; accord *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view

a state appellate court's review for plain error as the enforcement of a procedural default.").

The third factor requires a determination of whether the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim. The Sixth Circuit has determined that "Michigan's contemporaneous-objection rule 'constitutes an adequate and independent state ground for foreclosing federal review.' " *Theriot*, 982 F.3d 999 at 1004 (quoting *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011)). Thus, the third and final procedural-default factor is satisfied, and Ford must now provide a basis to excuse the procedural default to have these claims reviewed on the merits.

### 3.  Claims IV, VI, and VII

Next, the Court finds that Ford has procedurally defaulted his compulsory rights (claim VI), structural error (claim VII), and portions of his ineffective assistance of counsel claim (claim IV) because he failed to raise these claims in the state courts and no longer has an available state-court remedy.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman*, 501 U.S.

at 731; *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987).  Further, when a petitioner fails to exhaust his claims, and has no remaining state-court remedy, his claims are properly deemed procedurally defaulted rather than simply unexhausted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010).

Here, Ford did not raise his compulsory rights or structural error claims before the state appellate courts on direct review or before the state trial court on collateral review. Although Ford raised several ineffective-assistance-of-trial-counsel claims before the state courts, he did not raise the arguments that: (1) counsel failed to follow Ford's choice of representation, ECF No. 1 at PageID.70, (2) counsel failed to subject his case to meaningful adversarial testing, *Id*. at PageID.71, (3) counsel failed to investigate and call a cell phone expert, *Id*. at PageID.76, and (4) counsel failed to object to the prosecutor's closing statement regarding the bloody glove, *Id*. at PageID.76-77.

Ford has already filed one motion for relief from judgment, and no state remedy remains available. Because Ford failed to properly exhaust these habeas claims and now lacks an available remedy to do so, his claims are deemed procedurally defaulted. *See Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012); *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002).  Ford must also provide a basis to excuse this default as well.

### 4.  Excusing the Procedural Default

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

First, to the extent that Ford alleges ineffective assistance of trial counsel as cause to excuse his procedural defaults for the speedy trial and prosecutorial misconduct claims, such argument fails. The Court finds that Ford cannot establish prejudice (or entitlement to habeas relief) as the claims lacks merit for the reasons stated by the Michigan Court of Appeals in reviewing the issues for plain error.

Second, to the extent Ford claims that appellate counsel's failure to raise the compulsory rights, structural error, and ineffective assistance of counsel claims on direct appeal excuses his default, his argument similarly fails. Ford has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Moreover, strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003). Appellate counsel filed an appellate

brief that raised three issues. Appellate counsel reasonably chose to raise three claims challenging trial counsel's ineffectiveness, the improper admission of the victim's statements, and speedy trial violation. ECF No. 7-22, PageID.1692.

More importantly, this Court notes that in addition to the appellate brief filed by appellate counsel, Ford filed a supplemental Standard 4 pro per brief on his appeal of right before the Michigan Court of Appeals. Although Ford raised several claims, he did not raise the claims regarding violation of his compulsory rights, structure error, or ineffective assistance of counsel claims. Ford took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include these claims. Ford's inability to explain his own failure to raise his new claims in that pleading undermines his claim that ineffective assistance of appellate counsel was the sole reason his claims were not raised on direct review. *See Sheffield v. Burt*, 731 F. App'x 438, 442 (6th Cir. 2018) (holding habeas petitioner failed to show cause under Rule 6.508(D)(3) for failing to raise issues on direct appeal and noting "[petitioner] had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised" but he did not raise his defaulted issue); *see*

*also Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008). The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Murray*, 477 U.S. at 533; *Long*, 722 F.2d at 289.

Lastly, Ford argues that his default should be excused because he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Ford has made no such showing. Ford argues that exculpatory lab reports show that another individual's DNA was on the murder weapon and found at the crime scene. ECF No. 8, PageID.2184. The problem with Ford's argument is that the DNA reports are not "new" evidence as the Michigan Court of Appeals stated that these DNA reports were admitted into evidence at trial. *Ford*, 2019 WL 1371175, at *12. Ford therefore cannot establish actual innocence on this basis. Accordingly, his prosecutorial misconduct, speedy trial, ineffective assistance of counsel (in part), compulsory rights,

and structural error claims are barred by procedural default and do not warrant habeas relief.

## B. Due Process Spoliation of Evidence

Ford first argues that the prosecutor violated his Fourteenth Amendment due process rights by admitting altered or falsified evidence during trial. Specifically, Ford contends that the cellphone analyst, Stan Brue, spoliated or destroyed evidence by altering his cellular location data report and trial testimony to match the preliminary testimony and plea hearing statements of Ford's co-defendant Earnest Jackson, Jr. Ford further contends that Brue's testimony should have been ruled inadmissible under the standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Ford raised this claim on collateral review, which the state trial court rejected, concluding that:

> The defendant alleges that the prosecution's witness Stan Brue spoiled the evidence by changing the times and tower sectors of his reports to match the testimony of Ernest Jackson's testimony at the preliminary examination. The defendant alleges that Brue altered data to corroborate Jackson's testimony to show that defendant and Jackson were together the night of the victim's murder. The defendant does not explain how his exhibits support his allegations.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, . . .". *People v Watson*, 245 Mich App 572, 587 (2001). Such cursory treatment constitutes abandonment of the issue. *Id*. The defendant is not entitled to relief on this issue.

ECF No. 7-19, PageID.1471.

The state trial court did not unreasonably apply federal law or contravene clearly established Supreme Court precedent. To the extent that Ford argues that the admission of Brue's testimony violated any of the Michigan Rules of Evidence or constituted state-law error, he fails to state a cognizable claim. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In addition, "screening evidence through *Daubert's* standards is not constitutionally required", *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017), and *Daubert* "cannot serve as a basis for granting habeas corpus relief." *Thomas v. Jackson*, No. 17-1813, 2018 WL 3491763, at *3 (6th Cir. Feb. 13, 2018).

The Court construes Ford's spoliation-of-evidence claim as alleging prosecutorial error. When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis . . . . is the fairness of the trial, not the culpability of the prosecutor." *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also Givens v. Yukins*,

2000 WL 1828484 at *6 (6th Cir., Dec. 5, 2000) ("[t]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused") (quoting *Phillips*, 455 U.S. at 219).

It has long been recognized that "the knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010) (quoting *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)). To establish that testimony violates this precept, Ford must show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Brooks*, 626 F.3d at 894-95 (quoting *Bell*, 161 F.3d at 343).

Ford fails to show that the prosecutor's admission of Brue's testimony and data report violated his due process rights. He has not established the falsity of Brue's testimony, and points only to inconsistencies and discrepancies.  For instance, Ford asserts that during Jackson's preliminary examination, Brue testified that Jackson had received nine calls interacting with a cell tower near the crime scene area from 1:07 a.m. to 3:40 a.m., but at his preliminary examination, Brue testified that Jackson only received four outgoing calls. ECF No. 1, PageID.31. He also claims that Brue's testimony was inconsistent with the discovery he produced, and he altered his

testimony with respect to the period that Jackson's cellphone connected to a cell tower near the crime scene area. *Id*. at PageID.34. But mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by the prosecutor. *Coe,* 161 F.3d at 343. The fact that a witness contradicts himself or changes his story also does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). Accordingly, Ford is not entitled to habeas relief on this claim.

## C. Right to Confrontation

Next, Ford asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting the victim's dying declaration(s) identifying him as the responsible individual. Ford argues that the statements were inadmissible testimonial hearsay and admitted without a proper foundation. The Michigan Court of Appeals rejected this claim, concluding that:

> Testimony from first responders clearly established that Beasley was in extremis at the time he provided statements identifying the defendant as his assailant. They testified that Beasley was found kneeling in an open field. His feet and hands were bound with copper wire and he looked as if he had been beaten. He had multiple injuries to his face. Blood was pooling at his jaw. He had been stabbed and had brain matter coming out of his ears. He collapsed when firefighters arrived. Officer Abery Thomas testified that after stating his name, Beasley just began to tell

what happened to him. Officer Thomas testified, "He told me that he was set up. And I asked him how he was set up. And he told me Marcus Ford set him up. That's who did this to him. I also asked him how was he – how did he know Marcus Ford. And he said that he was dating his mother, Marcus Ford's mother." Officer Belser testified that Beasley told him that the person who did this to him was in an SUV, his name was Marcus Ford, and Marcus Ford was "his girlfriend's son." Sgt. Dabrowski testified that he heard Beasley say, "Marcus Ford did this to me" and spell out Marcus Ford's name. Officer Thomas followed up with pointed questions and learned that Marcus Ford was a thirty-year-old black male, drove an SUV, assaulted Beasley because he thought Beasley assaulted his mother, had put Beasley in the back of a trunk, and brought him to the field.

The declarant is not required to state that he believes he is going to die. *Siler*, 171 Mich. App. at 251, 429 N.W.2d 865. Taken together, Beasley's physical condition and statements to law enforcement demonstrated that he was under the conviction of approaching death. Beasley's urgency and mission to identify defendant came out in his spontaneous narrative to Officer Thomas of who assaulted him and how it happened. Above all else, Beasley wanted law enforcement to know his assailant's name. Beasley did die some seven hours after making the dying declarations however, defendant presents no case law supporting that this passage of time diminishes the declarant's belief that death was imminent. The court's decision to admit the statements was within the range of principled outcomes.

*Ford*, 2019 WL 1371175, at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Ford claims that the admission of the victim's statements was improper for lack of foundation, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See Walker v. Harry*,

462 F. App'x 543, 545 (6th Cir. 2012); *Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Dept. of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-520 (6th Cir. 2007)); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle*, 502 U.S. at 69-70).

Second, Ford has not shown that the state court's decision was contrary to clearly established Supreme Court precedent. The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause provides criminal defendants the right to confront and cross-examine witnesses against them. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 315 (1973). The right to confront adverse witnesses generally prevents a court from admitting an out-of-court statement against a criminal defendant. *California v. Green*, 399 U.S. 149, 155-158 (1970). The Sixth Amendment protections, however, are not so broad as to exclude the

admission of all hearsay statements against a defendant despite the inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-848 (1990).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements which are testimonial in nature are barred by the Confrontation Clause of the Sixth Amendment if the declarant is unavailable at trial and the defendant did not have a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. While the Supreme Court indicated in *Crawford* that dying declarations may be an historical exception to this rule, it has yet to definitively rule on the status of dying declarations under the Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 351 (2011); *see also Walker*, 462 F. App'x at 545-546 (explaining that "[i]n Crawford and again in *Giles v. California*, 554 U.S. 353 (2008), the Supreme Court hinted that dying declarations may fall within an exception to the constitutional bar against testimonial hearsay"); s*ee also Woods v. Cook*, 960 F.3d 295, 300 (6th Cir. 2020); *Holbrook v. Burt*, No. 20-1408, 2020 WL 6440468, at *2 (6th Cir. Sept. 22, 2020) ("While the Supreme Court has acknowledged the dying declaration exception to the hearsay rule, the Court has declined to decide whether the Confrontation Clause incorporates that exception.").

A state court cannot act unreasonably under AEDPA if the Supreme Court has not decided a question. *See Wright v. Van Patten*, 552 U.S. 120, 125-126 (2008) (per curiam) (reversing grant of habeas relief because Supreme Court precedent provided "no clear answer to the question"); *Walker*, 462 F. App'x at 545-546; *Taylor*, 2011 WL 4694055 at *3 (citing cases).

Lastly, Ford has not established that the state court unreasonably applied a recognized common law exception to the Confrontation Clause. The Sixth Circuit has explained the two recognized exceptions:

> Courts have recognized two key common law exceptions. The first, forfeiture by wrongdoing, permits the introduction of statements by a witness unable to testify at trial and who was "detained or kept away by the means of procurement of the defendant." *Giles*, 554 U.S. at 359 (quotation omitted). This exception prevents defendants from reaping the benefit of witness tampering or intimidation or murder. The Supreme Court has expressly approved this exception and its historical pedigree. *Id*. at 359–61. The second exception, dying declarations, allows the government to introduce testimonial statements made by a witness who is "on the brink of death and aware that he was dying." *Id*. at 358.

*Woods*, 960 F.3d at 300.

Here, the admission of the victim's statements was proper under these two common law principles: forfeiture by wrongdoing and dying declaration. First, given that the victim was unable to testify at trial due to Ford's wrongful conduct, it cannot be said that the admission of his statements violated

Ford's confrontation rights.  Second, the state court reasonably determined that that the victim's statements qualified as dying declarations. When first responders found the victim, he was in a critical state.  The victim was "significantly burned" with his hands and feet bound by copper wires, and badly beaten to the point that "brain matter [was] coming out his ears." ECF No. 7-12, PageID.955, 1026, 1042. The victim identified Ford as the responsible individual and provided details of the assault.  *Id*. at PageID.954, 1026, 1043. Those statements were based upon the victim's personal knowledge and were made when he believed that his death was imminent given the nature and extent of his injuries. The Court notes that the victim died that same day. *Id*. at PageID.1068. Because these statements were properly admitted under recognized hearsay exceptions, Ford fails to demonstrate that the admission of this evidence violated his right to confrontation.

## D. Ineffective Assistance of Trial Counsel

Next, Ford raises a litany of ineffective-assistance-of-trial-counsel claims. The state courts rejected each of Ford's claims. The state courts' decisions did not unreasonably apply federal law or contravene clearly established Supreme Court precedent. The Court will address each argument in turn.

25

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, a petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id*. at 687. Ford must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and he must overcome the presumption that "the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 690.

The standard for obtaining habeas corpus relief is " 'difficult to meet.' " *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but

whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

## 1. Failure to Present Favorable Evidence

Ford asserts that trial counsel failed to present favorable DNA evidence, failed to investigate alibi and res gestae witnesses, failed to investigate a Facebook alibi, failed to adequately impeach certain witnesses, failed to impeach the victim's out-of-court statements, and failed to submit propensity evidence against Earnest Jackson.

*DNA Evidence.* Ford asserts that trial counsel was ineffective for failing to argue that the presence of a third-party's DNA on the lighter, necktie, and sunglasses found at the crime scene suggested that someone other than Ford committed the crimes. The Michigan Court of Appeals rejected this claim on the basis that:

> The presence of the lighter and the issue of there being no DNA was addressed through witness testimony and argued by defense counsel in closing. Chief Patrick McNulty testified that he found two plastic lighters and a metal lighter with a "finger signature." Sgt. Griffin testified that of the 48 items collected in connection with this case, and the buccal swabs from defendant, Jackson and Earl, no DNA was found nor conclusion reached to connect those individuals to the items collected. Defense counsel highlighted this testimony and made the connection between it and the prosecutor's failure to test items found at the scene with DNA from Jackson or Cory.

*Ford*, 2019 WL 1371175, at *10.

27

The Michigan Court of Appeals' decision was not an unreasonable application of federal law or the facts. While the right to effective assistance of counsel extends to closing arguments, counsel nonetheless has wide latitude in deciding how best to represent a criminal defendant, and deference to a defense counsel's decisions in his closing argument is particularly important because of the broad range of legitimate defense strategies at that stage. *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). During trial, Sgt. Griffin testified that while multiple items were collected from the crime scene, including clothing, a coat, lighters, tarp material, ties, and glasses, "[t]here [had] not been any conclusions reached as to identifying an individual in connection with some of the items." ECF No. 7-14, PageID.1245. Considering Sgt. Griffin's testimony, defense counsel reasonably argued at closing that the investigation lacked DNA evidence and that investigators failed to test certain items. ECF No. 7-15, PageID.1280. Notably, counsel also raised the inference that the DNA recovered could be "somebody else's." *Id*. The Court will not second guess counsel's decision on how to argue evidence before the jury. *Steiner v. Morrison*, No. 2:20-CV-11364, 2023 WL 3129443, at *7 (E.D. Mich. Apr. 27, 2023). Ford has not shown that counsel's performance was deficient. He is not entitled to relief on this claim.

28

*Failure to Investigate Witnesses*. Ford claims that defense counsel was ineffective for failing to investigate alibi and res gestae witnesses: Isaiah Ford, La'Tice Ford, Ms. Stitts, Sgt. Steven Ford, Jeremy Earl, Marcia Moseley, and Corporal Abery Thomas. ECF No. 1, PageID.69-70. Ford raised this claim generally in his motion for relief from judgment. ECF No. 7-18, PageID.1352. The trial court rejected the ineffective assistance of counsel claim. ECF No. 7-19, PageID.1473.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The state court record shows that the prosecution called Jeremy Earl and Abery Thomas to testify at trial and defense counsel cross-examined each witness. As to the other witnesses, Ford does not attach any affidavits explaining what each witness's testimony would have been at trial, and a habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been helpful to his defense. *See Tinsley v.*

*Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("[Petitioner] has not introduced affidavits or any other evidence establishing what [potential witnesses] would have said . . . . In the absence of any evidence showing that they would have offered specific favorable testimony, [Petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."). To the extent Ford attaches Isaiah Ford's affidavit, the statements in the affidavit do establish what his testimony would have been at trial, nor do the statements appear to aid Ford's defense. For these reasons, he is not entitled to relief on this claim.

*Investigate Facebook Alibi*. Ford argues that counsel was ineffective for failing to investigate the fact that he signed into his Facebook account at the time of the offense, which he claims would have established his location. The Michigan Court of Appeals rejected this claim because "[Ford] waived his right to testify, and thus the ability to introduce this evidence." *Ford*, 2019 WL 1371175, at *10. The Court agrees, and additionally notes that while defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, *Strickland*, 466 U.S. at 690-91, a conclusory or speculative argument that counsel should have done more with no supporting evidence or offer of proof is insufficient to warrant habeas relief, *Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("[C]onclusory

and perfunctory . . . claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief."). Ford has not presented any evidence to this Court or the state courts establishing that logging into his Facebook account would have revealed that he was at a location different from the area identified by cellphone expert Stan Brue. Counsel was not ineffective for failing to investigate this evidence.

*Impeachment*. Ford argues that counsel was ineffective for failing to impeach the victim's dying declarations with the toxicology report, failing to adequately impeach Brue's cellular data testimony, and failing to adequately impeach first responders Dabrowski, Belser, and Thomas with their written reports. The state courts rejected these arguments. *Ford*, 2019 WL 1371175, at *9-10; ECF No. 7-19, PageID.1473.

 "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*.

31

First, Ford argues that defense counsel was ineffective for failing to impeach the victim's dying declarations with the toxicology report showing alcohol use before his death. The Michigan Court of Appeals ruled that even though the record supports the victim consumed alcohol the night he died, "[q]uestioning on the toxicology report would have led to re-direct as to the effect the injuries may have had on the lab results. Given the gruesome pictures and testimony, it was not unreasonable for defense counsel to limit further questioning on the victim's physical state." *Ford*, 2019 WL 1371175, at *10. The Court agrees that defense counsel's decision to avoid drawing attention to the victim's severe injuries was a matter of sound trial strategy.

Second, Ford argues that defense counsel was ineffective for failing to adequately cross-examine cellphone expert Stan Brue with his inconsistent statements. The record shows defense counsel thoroughly challenged Brue's opinion:

   • Counsel elicited an admission that Ford lived close to the crime scene.

   • Counsel elicited testimony that the cellphone companies did not provide GPS information to law enforcement.

   • Counsel had Brue testify in depth regarding the science behind cellphone data analysis, suggesting its limitations.

ECF No. 7-14, PageID.1226-1238. Considering counsel's reasonable efforts to diminish the weight of Brue's testimony, this Court will not second guess counsel's impeachment strategy. Accordingly, counsel's actions were not deficient under *Strickland*.

Third, Ford argues that defense counsel was ineffective for failing to adequately cross-examine the identification testimony of Dabrowski, Belser, and Thomas with their written reports. The Michigan Court of Appeals denied the claim, stating that:

> Defense counsel did address the omissions and inconsistencies between and among the reports in the context of his theory of defense. The defense trial theory was that Jackson and Cory were the ones who killed Beasley. In advancing this theory, trial counsel challenged the identification testimony from the above first responders on the basis that what they testified to was not contained in their reports and in closing statement argued that these witnesses made up their testimony along the way to conform to the prosecutor's theory of the case.

Ford, 2019 WL 1371175, at *9.

In this case, defense counsel made a substantial effort to cross-examine each of the witnesses. To the extent Ford argues that counsel should have impeached the witnesses with minor discrepancies or immaterial inconsistencies, the record shows that counsel did question the witnesses on several inconsistencies and gaps in their written reports, including questioning the gaps in Thomas's report, ECF 7-12, PageID.967,

the accuracy of the victim's statements recorded in the reports, *Id.* at PageID.971,1034-45, the spelling of Petitioner's and the victim's names, *Id.* at PageID.1046, and the relationship between Ford and the victim, *Id.* at PageID.1049. Ford has not shown that counsel's actions fell outside reasonable professional judgment. *See Peterson v. Smith*, 510 F. App'x 356, 362 (6th Cir. 2013) ("[P]etitioner has not demonstrated that the failure of trial counsel to attempt to impeach the eyewitness with minor inconsistencies, immaterial discrepancies, or details omitted from the initial statement to police fell outside the wide range of reasonable professional assistance.").

*Propensity Evidence*. Ford argues that defense counsel was ineffective for failing to admit evidence that co-defendant Jackson had the propensity to commit the crime based on assaults that he committed in prison. Ford raised this argument in his motion for relief from judgment. The trial court denied all ineffective assistance of trial counsel claims. Ford fails to establish that this evidence would have been admissible impeachment evidence under the Michigan Rules of Evidence. Indeed, he cites no rule or case law supporting his position. Conclusory ineffective assistance of counsel claims will not support habeas relief. *Wogenstahl*, 668 F.3d at 335-36.

## 2. Failure to Follow Sound Trial Strategy

Ford asserts that trial counsel was ineffective for failing to file pretrial motions to suppress evidence, failing to object to jury instructions on flight, and failing to move to dismiss based on a speedy trial violation. The Michigan Court of Appeals rejected each of these arguments on direct review.

*Motions to Suppress*. Ford argues that defense counsel was ineffective for failing to file motions to suppress cellphone evidence seized without a warrant and to suppress the victim's dying declarations. The Michigan Court of Appeals rejected these arguments, concluding that because the cellphone evidence was properly seized under an incident to a lawful arrest and the victim's dying declarations were properly admitted under the Michigan Rules of Evidence, counsel did not have a basis to file any pretrial suppression motions. *Ford*, 2019 WL 1371175, at *2, 7. For the reasons given by the state trial court, and by this Court in the Confrontation Clause claim, the Court agrees that a motion to suppress the cellphone evidence and the dying declarations would have been futile. Trial counsel cannot be deemed ineffective for failing to make a futile objection or meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010). Ford fails to establish that counsel was ineffective in this regard. Habeas corpus relief is not warranted on this claim.

35

*Failure to Object.* Ford argues that defense counsel was ineffective for failing to object to the issuance of a flight instruction. The Michigan Court of Appeals ruled that the flight jury instruction was proper because "there was direct and circumstantial evidence that defendant hid after the alleged crimes," and "counsel cannot be faulted for failing to make a futile argument." *Ford*, 2019 WL 1371175, at *8. The Court agrees. Jackson testified that Ford was staying at another individual's home after the murder and was aware that the police were looking for him. ECF No. 7-13, PageID.1144-45. While the court of appeals also points to other evidence in the record, Jackson's testimony alone would support a flight instruction. Because the instruction was proper, defense counsel was not at fault for failing to raise a futile objection. *Tackett*, 956 F.3d at 375.

*Motion to Dismiss.* Ford next argues his defense counsel was ineffective for failing to move for dismissal of the charges based upon a violation of his right to a speedy trial.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI. Courts must balance the following four factors in determining whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4)

prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 528 (1972). The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest. *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald*, 456 U.S. 1, 7 (1982). "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance." *Barker*, 407 U.S. at 530. Generally, depending on the nature of the charges, a delay that approaches one year is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992).

The Michigan Court of Appeals applied the factors set forth in *Barker* and denied Ford's speedy trial claim. The state court held that *Barker's* first factor – the length of the delay, in this case, 22 months – weighed in Ford's favor. Because the delay was over 18 months, the Michigan Court of Appeals found the delay presumptively prejudicial and considered the remaining *Barker* factors.

As to the second factor – reason for delay – the court found that this factor did not weigh in either parties' favor. When considering the third factor – assertion of the right – the court found it weighed in favor of the prosecutor due to Ford's failure to object. Finally, the fourth factor – prejudice – did not weigh in Ford's favor although he argued a key witness, his mother, died during the pendency of his case. The court determined that the substance

her testimony was presented through Sgt. Eby who testified that Patrick's text messages were sent as group text messages to both defendant and Jackson. Under the *Barker* factors, the court concluded that Ford was showed no injury from the delay and counsel was not ineffective for failing to move to dismiss based on the denial of a speedy trial. *Ford*, 2019 WL 1371175, at *13.

The state court's application of *Barker* was neither contrary to nor an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The delay, while long, was not the result of bad faith or an attempt to gain a tactical advantage. No prejudice resulted from the delay because the substance of what would have been Ms. Patrick's testimony was provided to the jury. Ford fails to show any other specific prejudice from this delay. Because Ford was not denied his right to a speedy trial, trial counsel was not ineffective for failing to move for dismissal of the charges on speedy trial grounds. Defense counsel cannot be said to be ineffective for failing to bring a speedy trial motion that is meritless. *See Shanks v. Wolfenbarger*, 387 Fed. Supp. 2d 740, 750 (E.D. Mich. 2005). Ford is not entitled to habeas relief on this ineffective assistance of counsel claim.

### E. Prosecutorial Misconduct

Lastly, Ford argues that prosecutor committed misconduct by failing to correct the perjured testimony of Sgt. Eby and Detective Rutledge regarding the search and seizure of his cellphone, and by failing to correct Jackson's perjured testimony of his fleeing and hiding from police. The Michigan Court of Appeals rejected both arguments, explaining:

> Defendant also argues that Sgt. Eby and Detective Rutledge testified falsely regarding defendant's arrest and, the search and seizure of defendant's cellular phone, and that the prosecutor committed misconduct by allowing this perjured testimony to stand. Again, we disagree.
>
> Defendant's perjury argument conflates admissibility of evidence with evidentiary weight. The trier of fact heard testimony from Sgt. Eby and Detective Rutledge giving one version of events. The record also contains video of the interrogation and the search warrant obtained on January 8. The defendant provided another version of events in his brief without any support from the record. He further declined to testify to his version of events.
>
> * * *
>
> Defendant also contends that the prosecutor engaged in misconduct by falsely presenting evidence that defendant fled and was in hiding. Defendant's support that evidence that he was hiding was false is only that it came from Jackson, who defendant argues was an incredible witness. The jury however was well-equipped to determine the veracity of Jackson's testimony. *McGhee*, 268 Mich. App. at 624, 709 N.W.2d 595.

*Ford*, 2019 WL 1371175, at *8-9.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). As discussed, to

prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Brooks*, 626 F.3d at 894-95 (quoting *Bell*, 161 F.3d at 343).

The Michigan Court of Appeals faithfully applied these federal tenets when it rejected Ford's arguments. Ford provides no evidence that Sgt. Eby and Detective Rutledge perjured their testimony.  To the extent he claims that their testimony was inconsistent or contained misstatements of fact, inconsistent testimony does not establish a prosecutor's knowing use of false testimony. *Coe*, 161 F.3d at 343. For the same reasons, Ford fails to show the Jackson's trial testimony was false merely because he provided untruthful statements to the police and lied during the preliminary examination. The prosecutor acknowledged at trial that Jackson had provided prior untruthful statements, and the jury was able to weigh the credibility of his testimony during deliberations. Because Ford has not shown the testimony was actually false, he is not entitled to habeas relief on this claim.

## IV.   REQUEST FOR DISCOVERY

Ford has also filed a request for discovery. ECF No. 9. Ford not shown an entitlement to any of that relief in light of the Court's decision to deny his habeas petition. Accordingly, Ford's request for discovery is DENIED.

## V.    CERTIFICATE OF APPEALABILITY

The Court declines to grant a certificate of appealability because Ford has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, an inmate must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make this showing, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. at 484.  For the reasons stated in this opinion, reasonable jurists would not find this Court's assessment of Ford's claims to

be debatable or wrong or that its procedural ruling was incorrect.  Therefore, the Court will deny a certificate of appealability.

## VI.   CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the request for discovery is **DENIED** as moot.

**IT IS SO ORDERED.**

s/Shalina D. Kumar_____
SHALINA D. KUMAR
United States District Judge

Dated:  September 11, 2025